IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-336-BR

| ARAMARK UNIFORM & CAREER APPAREL, LLC, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| DAVID HERNANDEZ, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on Aramark Uniform & Career Appeal, LLC's ("plaintiff") motion for partial summary judgment on its claims for breach of contract, breach of fiduciary duty, constructive fraud, and fraudulent inducement. (DE # 29.) David Hernandez ("defendant"), who appears pro se, filed a response in opposition. (DE # 34.) In response, plaintiff filed a reply. (DE # 38.) Thereafter, defendant filed a surreply. (DE # 44.)

**I.   BACKGROUND**

This motion for summary judgment arises from an employment dispute from defendant's employment with three corporations: plaintiff, Ocean Fresh Laundry ("Ocean Fresh") and Whitecap Linen ("Whitecap"). On 28 September 2016, plaintiff filed a complaint alleging nine claims: breach of contract based on defendant's employment agreement; breach of contract based on defendant's severance agreement; breach of fiduciary duty; breach of the implied covenant of good faith and fair dealing; unjust enrichment; constructive fraud; fraud; fraudulent inducement; and unfair and deceptive trade practices. (Compl. (DE # 1) at 7-12.) Defendant admits he was

working for the three corporations at the same time; however, he disputes that he violated his employment agreement with plaintiff.  (See Hernandez Dep. (DE # 32-3) at 52, 61.)  The facts are as follows.

Defendant is currently a citizen of Pennsylvania, and previously a citizen of Texas.[1]  (See Pl.'s Statement Material Facts (DE # 32) at 1; Def.'s Answer (DE # 11) at 1.)  Plaintiff is a limited liability company headquartered in California and incorporated in Delaware.  (See Pl.'s Statement Material Facts (DE # 32) at 1.)   Plaintiff operates a commercial laundry business, providing its services to industrial and health care facilities across the country.  (See id. at 2; Hernandez Dep. (DE # 32-2) at 39.)  On 28 May 2014, defendant signed an employment agreement with plaintiff to be the Senior Director of Regional Production at an annual salary of $122,500.00 with the opportunity for bonuses.  (See Pl.'s Statement Material Facts (DE # 32) at 3; Hernandez Dep. (DE # 32-4) at 56.)  Defendant's contract contained non-compete, non-solicitation, and non-disclosure clauses.  (See Pl.'s Statement Material Facts (DE # 32) at 4; Hernandez Dep. (DE # 32-2) at 41.)  While employed by plaintiff, defendant was based out of the Dallas, Texas facility; however, he was also responsible for production operations at plaintiff's facilities in other areas of Texas, Arkansas, Oklahoma, Colorado, and Utah.  (See Pl.'s Statement Material Facts (DE # 32) at 5; Hernandez Dep. (DE # 32-3) at 49.)

---

[1] In his answer and response to plaintiff's motion for partial summary judgment, defendant raises the argument that venue is not proper in the Eastern District of North Carolina.  The court interprets defendant's answer and response as a challenge to venue.  See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (finding that pleadings of pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers).  While plaintiff has not properly plead that defendant was a resident of North Carolina, a substantial part of the wrongdoing, for purposes of venue, occurred in North Carolina, (Pl.'s Reply to Def.'s Resp. (DE # 38) at 9-10); see Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) (finding that the court should review not only those matters that are in dispute or that directly led to the filing of the action, but the entire sequence of events underlying the claim to determine venue).  Accordingly, venue is proper in this district, and the court analyzes the merits of plaintiff's motion.

On 14 July 2014, defendant created and signed an offer letter with Ocean Fresh as its Chief Operating Officer ("COO") with an annual salary of $60,000.00, part-time. (See Pl.'s Statement Material Facts (DE # 32) at 8-9; Hernandez Dep. (DE # 32-2) at 61, (DE # 32-3) at 3.) On 27 March 2015, defendant became a full-time employee at Ocean Fresh, earning an annual salary of $180,000.00. (See Pl.'s Statement Material Facts (DE # 32) at 13; Hernandez Dep. (DE # 32-3) at 29.) Defendant was interested in working for Ocean Fresh to gain ownership interest within the company. (See Pl.'s Statement Material Facts (DE # 32) at 12; Hernandez Dep. (DE # 32-2) at 59.) Defendant did not inform Ocean Fresh about his employment with plaintiff. (Hernandez Dep. (DE # 32-2) at 54.) Defendant also did not inform plaintiff about his employment with Ocean Fresh. (Id.) On 17 April 2015, defendant began consulting for Whitecap, a commercial linen provider in North Carolina. (See Pl.'s Statement Material Facts (DE # 32) at 7; Hernandez Dep. (DE # 32-3) at 31-32.) With Whitecap, defendant earned approximately $14,000.00 per month. (See Pl.'s Statement Material Facts (DE # 32) at 13; Hernandez Dep. (DE # 32-3) at 33.) On 1 December 2015, plaintiff terminated defendant's employment. (See Pl.'s Statement Material Facts (DE # 32) at 13; Hernandez Dep. (DE # 32-3) at 59.) On 1 June 2016, Ocean Fresh terminated defendant's employment. (See Pl.'s Statement Material Facts (DE # 32) at 15; Hernandez Dep. (DE # 32-3) at 66.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record as a whole reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

3

the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Before entering summary judgment against a pro se party, the party must be advised of his or her right to file counter-affidavits or other responsive material, and that the failure to respond might result in the entry of summary judgment. Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975); see Richardson v. Powel, 166 F. App'x 700, 702 (4th Cir. 2006). Defendant received a Roseboro notice regarding plaintiff's motion for partial summary judgment on 11 January 2018.

### III.   DISCUSSION

A.   Breach of Contract

Plaintiff moves for summary judgment as to defendant's alleged breach of three clauses in the employment agreement: non-compete clause, non-solicitation clause, and non-disclosure clause.

1. Non-Compete Clause

Under Texas law,[2] whether a covenant not to compete is enforceable is a question of law. Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642, 644 (Tex. 1994), abrogated on other grounds by Marsh USA Inc. v. Cook, 354 S.W.3d 764 (Tex. 2011), and holding modified by Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644 (Tex. 2006). The Texas Business and Commercial Code governs the enforceability of a covenant not to compete.

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Alex Sheshunoff Mgmt. Servs., 209 S.W.3d at 648 (citing Tex. Bus. & Com. Code § 15.50(a) (2009)).

In conducting this analysis: first, a court "determine[s] whether there is an 'otherwise enforceable agreement' between the parties," and second, "if so, [] whether the covenant is 'ancillary to or part of' that agreement." Marsh, 354 S.W.3d at 773. When a covenant not to compete contains mutual non-illusory promises, it is an enforceable agreement. Id.; see also Alex Sheshunoff Mgmt. Servs., 209 S.W.3d at 648–49 (finding a non-compete clause enforceable when there was consideration by both parties in the employment agreement). An "employer's promise to train the employee [which] might involve confidential or proprietary information," and the employee's reciprocal promise not to compete, are mutual non-illusory

---
[2] The court applies the choice of law provision in the employment agreement, which provides that Texas law will govern any employment disputes between plaintiff and defendant. See Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980). Additionally, under North Carolina's choice of law provision, the law of the state where the majority of tortious interference occurred is applied, which is also Texas. See Boudreau v. Baughman, 368 S.E.2d 849, 854 (N.C. 1988). Defendant does not dispute the applicability of North Carolina choice of law principles or the application of Texas substantive law.

5

promises. Alex Sheshunoff Mgmt. Servs., 209 S.W.3d at 649 (internal citation and quotations omitted). Third, the court considers the reasonableness of the limitations in the agreement, as to time, geographical area, and scope of activity to be restrained. Id. at 648.

Here, the non-compete clause is enforceable. That clause states, in relevant part,

> Employee acknowledges that in the course of his/her employment with Aramark, he/she will have access to information (confidential and otherwise) maintained in Aramark's computer system….
>
> Employee acknowledges that as additional consideration from Aramark, he/she shall receive special training related to the Industrial Uniform Business at great cost to Aramark….
>
> Employee acknowledges that as additional consideration from Aramark, he/she has received and had access to Trade Secrets and/or Confidential Information with respect to financial matters, soliciting business, handling customers, adjusting complaints, retaining the patronage of Aramark's customers, and operating an Industrial Uniform Business….
>
> Employee agrees that while Employee is employed by Aramark, and for twelve (12) months after such employment ends for any reason, Employee will not, either directly or indirectly, (i) be employed or based at, consult for, or have any ownership interest in, any Industrial Uniform Business located within 100 miles of any location where Employee was based by Aramark at any time during the twelve (12) months immediately before Employee's employment with Aramark ended….

(Emp. Agreement (DE # 32-4) at 58-59.)

Defendant signed, and the parties mutually entered into, the employment agreement regarding the non-compete clause with consideration on both sides. See Alex Sheshunoff Mgmt. Servs., 209 S.W.3d at 649 (finding that an employee's non-compete restriction in exchange for employer's training a mutual non-illusory promise). The non-compete is limited as to time, to one year, see TransPerfect Translations, Inc. v. Leslie, 594 F. Supp. 2d 742, 753-54 (S.D. Tex. 2009) (finding a one-year non-compete clause a reasonable time restriction), and geographical area -- 100 miles from Dallas, the plant defendant was based out of, see Zep Mfg. Co. v.

Harthcock, 824 S.W.2d 654, 660 (Tex. App. 1992) ("[W]hat constitutes a reasonable area generally is considered to be the territory in which the employee worked while in the employment of his employee."). In fact, defendant worked in an area much larger than the covenant restricts, across Oklahoma, Arkansas, Colorado, and Utah. (See Pl.'s Statement Material Facts (DE # 32) at 5; Hernandez Dep. (DE # 32-3) at 49.) Therefore, the agreement is enforceable on its terms.

Absent ambiguity, the construction of a written contract is a question of law for the court. Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196 (Tex. 1962). "[W]here an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968) (citation omitted). "Only where a contract is ambiguous may a court consider the parties' interpretation[.]" Kachina Pipeline Co., Inc. v. Lillis, 471 S.W.3d 445, 453 (Tex. 2015) (finding a party's interpretation of an agreement parol evidence, which cannot be used to create ambiguity in an unambiguous contract).

Defendant acknowledges Ocean Fresh is within 100 miles of plaintiff's Dallas facility, however he did not believe Ocean Fresh and plaintiff were competitors. (See Hernandez Dep. (DE # 32-3) at 30, 52.) Rather, defendant describes plaintiff as a corporation in the "Industrial Uniform Business," while Ocean Fresh was in the "Health Care Laundry" business. (Id. at 2 3-23.)

7

The employment agreement defines "Industrial Uniform Business" as

> without limitation, the manufacturing, renting, selling, supplying, washing, cleaning, pressing, mending, dry-cleaning, processing, picking-up, and delivering of uniforms, apparel, garments, mats, mops, linens, towels, and other industrial laundry items, and the direct sale of all such items by way of catalogues, telephone direct marketing and electronic commerce.

(Emp. Agreement (DE # 32-4) at 57.) Ocean Fresh is a commercial laundry business, that "process[es] both customer owned goods [] and rental goods[,]" and launders products in the healthcare setting, such as towels, linens, curtains, and scrubs. (Gerald Hudson Decl. (DE # 32-7) at 19.) It is unambiguous the laundering of towels, health care scrubs, or other linens, would fall under the employment agreement's definition of "Industrial Uniform Business." Ocean Fresh also considers themselves competitors and compete for the same clientele against plaintiff. (Jan Hudson Decl. (DE # 32-6) at 28.) By being employed by Ocean Fresh at the same time he was employed with plaintiff, defendant breached his covenant not to compete. See Valero Mktg. & Supply Co. v. Kalama Int'l, 51 S.W.3d 345, 351 (Tex. App. 2001) ("When the evidence is undisputed regarding a person's conduct under a contract, the court as a matter of law determines whether the conduct shows performance or breach of a contract obligation."). Plaintiff's motion for partial summary judgment will be allowed on the issue of defendant's breach of this provision.

    2.       Non-Solicitation Clause

Under Texas law, non-solicitation clauses are analyzed under the same framework as covenants not to compete. See Marsh, 354 S.W.3d at 768 ("Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the [Covenant Not to Compete] Act.").

The non-solicitation clause at issue in this case states,

> ARAMARK's Trade Secrets and/or Confidential Information and training which, if he/she became employed by a competition anywhere in the United States, would allow the competitor to unfairly compete with ARAMARK. Therefore, Employee agrees that while Employee is employed by ARAMARK, and for twelve (12) months after such employment ends for any reason, Employee will not, either directly or indirectly….
>
> (ii) call on, solicit, or communicate with any of ARAMARK's Customers contacted by Employee within the proper twelve (12) months for the purpose of obtaining Industrial Uniform Business from such Customer other than for the benefit of ARAMARK….

(Emp. Agreement (DE # 32-4) at 58-59.) The employment agreement defines "Customer" as

> any customer (whether actual or potential) with whom Employee had business contact on behalf of Aramark during the twelve (12) months immediately before Employee's employment with Aramark ended.

(Id. at 57.)

Similar to the non-compete clause, the non-solicitation clause is reasonably limited to one year after the termination of employment to "any of ARAMARK's Customers contacted by Employee" to obtain industrial uniform business from them, (Emp. Agreement (DE # 32-4) at 59.) Cf. TransPerfect Translations, Inc., 594 F. Supp. 2d at 755 (finding a non-compete clause which restricted the employee's ability to compete with any of the company's clients, as opposed to clients he solicited or sold to, unreasonable). This covenant provides for a mutual exchange of non-illusory promises: plaintiff trained the defendant using confidential information and defendant promised not to use that information, within a year post-employment, to obtain business. See Marsh, 354 S.W.3d at 773. Accordingly, it is enforceable as a contract. See Alex Sheshunoff Mgmt. Servs., 209 S.W.3d at 649 (finding a non-solicitation clause enforceable when it is reasonable and does not "impose a greater restraint than is necessary to protect the goodwill

9

or other business interest of the promise"). The court now turns to defendant's alleged breach of this contract provision.

Plaintiff presents evidence through the Declaration of Jan Hudson, the Chief Executive Officer of Ocean Fresh, that defendant worked on a project at the Baylor Medical Center at Uptown ("Baylor Medical"), in which Ocean Fresh and plaintiff were competing over business. (Jan Hudson Decl. (DE # 32-6) at 30-31.) Plaintiff presents evidence that defendant disclosed pricing information about plaintiff during a meeting with Ocean Fresh and Baylor Medical, as a result of his access to pricing information through his position with plaintiff. (See id.) ("One of Hernandez's primary duties was to participate in pricing, bid preparation, and customer retention for Ocean Fresh's customers. This often required him to prepare customer bids and competitively negotiate against Aramark."). Plaintiff also presents evidence that defendant worked on other sales projects for Ocean Fresh, including the Massage Green Spa, the Baylor Plaza Hotel, the University Behavioral Health of Denton, and one unnamed corporation. (Id.)

Defendant stated in his deposition that Ocean Fresh's contract with Baylor Medical "ended" before he started working for Ocean Fresh. Specifically, he claims, "The transition – the contract ended way before I even got there. That's one of the things that brought me to the table with Ocean Fresh was my knowledge of – of hospitals. And that was the very first conversations they brought me into." (Hernandez Dep. (DE # 32-3) at 27.) Defendant also claims that he did not take part in sales at Ocean Fresh. (See Def.'s Resp. to Pl.'s Interrog. (DE # 19) at 5 ("Hernandez has had no formal sales training and sold no accounts for Ocean Fresh in the entire time frame he was employed by them."); Hernandez Dep. (DE # 32-2) at 16-17 ("They labeled me as COO, but I never had any financial – real financial responsibilities. The owner is listed as Jan Hudson, but really the real owner is Gerry Hudson. He actually is the person that

10

handles all the money. He handles all the decision-making. That's one of the reasons out relationship fell apart was because I wasn't able to make any decisions."); Hernandez Dep. (DE # 32-2) at 55 (answering negatively to a question asking whether he would negotiate product prices to improve Ocean Fresh's margins and find Ocean Fresh discounts using his leverage). This evidence creates a dispute as to whether defendant engaged in conduct violative of the non-solicitation clause.

Plaintiff also fails to show, as a matter of law, that defendant violated the non-solicitation clause in terms of plaintiff's customers. The employment agreement defines "customer" as "any customer (whether actual or potential) with whom Employee had business contact on behalf of Aramark." (Emp. Agreement (DE # 32-4) at 57.) Plaintiff does not present any evidence that defendant contacted any of the above entities, including Baylor Medical, through his position with plaintiff. At most, plaintiff demonstrates that defendant had contact with Baylor Medical, and others, on behalf of Ocean Fresh and Ocean Fresh alone. Accordingly, plaintiff's motion for partial summary judgment will be denied on the issue of whether defendant breached the non-solicitation clause.

3. Non-Disclosure Clause

Under Texas law, to prove breach of a non-disclosure clause, a plaintiff must establish the following elements:

> (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.

Alliantgroup, L.P. v. Feingold, 803 F. Supp. 2d 610, 623 (S.D. Tex. 2011). "The issue of whether a party breached a contract is a question of law." Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App. 2005).

The non-disclosure clause at issue in this case states,

> Employee acknowledges that in his/her position, he/she had access to ARAMARK's Trade Secrets and/or Confidential Information and training which, if he/she became employed by a competition anywhere in the United States, would allow the competitor to unfairly compete with ARAMARK. Therefore, Employee agrees that while Employee is employed by ARAMARK, and for twelve (12) months after such employment ends for any reason, Employee will not, either directly or indirectly….
>
> (iii) become employed in a capacity in which it is reasonable to believe that Employee will disclose ARAMARK's Trade Secrets and/or Confidential Information.

(Emp. Agreement (DE # 32-4) at 58-59.)

To support its claim, plaintiff presents evidence that defendant disclosed information relating to plaintiff's pricing information on multiple bids that he worked on for Ocean Fresh. (See Jan Hudson Decl. (DE # 31-6) at 31; Gerald Hudson Decl. (DE # 31-7) at 21; West Decl. (DE # 31-7) at 66.) In response, defendant contends he has never had access to plaintiff's pricing and sales contact information. (See Def.'s Surreply (DE # 44) at 3-4.) In his deposition, defendant states that he did not negotiate product prices, make final decisions, or share information that would hurt plaintiff. (See Hernandez Dep. (DE # 32-2) at 36-37 ("The only way that I saw it is not sharing any information that would hurt Aramark in any way and not speaking poorly of Aramark, which I've never done.")). Viewing this evidence in the light most favorable to the non-moving party, defendant, there is a genuine issue of material fact over the type of information defendant had access to and whether he released any of that type of information on behalf of Ocean Fresh. Plaintiff's motion for partial summary judgment will be denied on the issue of defendant's breach of the non-disclosure clause.

12

B. Breach of Severance Agreement

Under Texas law, to prove breach of a severance agreement, a plaintiff must demonstrate the following elements:

> (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.

Alliantgroup, L.P. v. Feingold, 803 F. Supp. 2d at 623. "The issue of whether a party breached a contract is a question of law." Aguiar, 167 S.W.3d at 450.

The severance agreement at issue in this case states, in relevant part,

> If you become actively employed during the Severance Pay Period, you must give written notice to Aramark of the date you commenced such employment, the name and address of your new employer, and within two business days of commencing such employment. You agree that Severance Pay will be reduced by amounts that you owe to Aramark, if any….
>
> Severance payments and other benefits under this Agreement shall immediately cease, without notice, and/or not be payable, if. . . (D) you breach any term of this Agreement or any other agreement with Aramark or any of its affiliated companies by which its terms remains in effect following the Effective Date of Termination.

(Severance Agreement (DE # 32-5) at 41-42.) Defendant signed the severance agreement on 24 December 2015, after his termination on 1 December 2015. (Id. at 39, 45.) Under the terms of the agreement, defendant was to receive two weeks of basic severance pay of his current weekly base salary starting, followed by twenty-two weeks of the same pay from either the end of the previous pay period, or one week after defendant signed the agreement. (Id. at 39, 44.) However, from 27 March 2015, to 1 June 2016, defendant was also COO for Ocean Fresh. (See Hernandez Dep. (DE # 32-3) at 29, 67; see also Ocean Fresh Termination Letter (DE # 32-5) at 36.) Defendant did not provide written notice to plaintiff that he was so employed. Because defendant failed to give notice to plaintiff about his employment with Ocean Fresh and breached

13

his employment agreement with plaintiff by competing with it, defendant breached the severance agreement, and plaintiff paid defendant severance pay when it was not obligated to do so. Plaintiff's motion for partial summary judgment will be allowed on defendant's breach of the severance agreement.

C.   Breach of Fiduciary Duty

Absent a factual dispute, the "determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." Nat'l Med. Enters. v. Godbey, 924 S.W.2d 123, 147 (Tex. 1996) (internal quotations and citation omitted). To establish a breach of fiduciary duty, a party must show: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 283 (5th Cir. 2007). Fiduciary relationships can result from formal or informal relations. Compare Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998) ("In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law."), with Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 287 (Tex. 1998) (recognizing an informal fiduciary duty arises from "a moral, social, domestic or purely personal relationship of trust and confidence.").

Under Texas law, a fiduciary relationship "includes those informal relations which exist whenever one party trusts and relies upon another." Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp., 160 S.W.2d 509, 512–13 (Tex. 1942) (finding an employee, salesman, had a fiduciary relationship with his employer). This may include a relationship between an employee and employer, see Navigant Consulting, Inc., 508 F.3d at 283; however, there is no general

14

proposition that the typical employment relationship creates an informal fiduciary relationship, Melanson v. Navistar, Inc., No. 3:13-CV-2018-D, 2014 WL 4375715, *12 (N.D. Tex. Sept. 4, 2014). Rather, in Melanson, the court found that "[a]lthough [] [it] is aware of two cases in which courts recognized fiduciary duties in the context of employee-employer relationships, both involved an employee who assumed a special role vis-a-vis his employer. In both, the employee acted as a sales representative on behalf of the employer and had an undisclosed adverse interest in the underlying business transaction." 2014 WL 4375715, at *12; see Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176–177 (Tex. 1997) (citation omitted) ("[N]ot every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship."). As a matter of policy, "[i]n order to give full force to contracts, we do not create [] a [fiduciary] relationship lightly." Schlumberger Tech. Corp., 959 S.W.2d at 176–177.

Here, the court cannot determine as a matter of law that plaintiff and defendant were in a fiduciary relationship. Plaintiff claims, "By Hernandez's own testimony and admissions, he was a fiduciary of Aramark, breached his duties to Aramark, and caused the company significant damages." (Pl.'s Mem. Supp. Summ. J. (DE # 30) at 21.) In support of this contention, plaintiff cites a non-responsive request for admission and the deposition of defendant. (Id.; Pl.'s Reply (DE # 38) at 8.) As for the non-responsive request for admission, on 7 March 2017, plaintiff sent its first requests for admissions. After 30 days lapsed without response by defendant, plaintiff moved to have defendant's non-response deemed as an admission under Federal Rule of Civil Procedure 36. The court denied plaintiff's motion on 1 January 2018. (DE # 36, at 5-6.) In doing so, the court found admission was not warranted, considering defendant's pro se status, his eventual response to the admissions on 24 July 2017, and interest in allowing the case to proceed on the merits. (Id.) See also Wright v. Thomas, 5:14-CV-85-BO, 2016 WL 44090631, *1

15

(E.D.N.C. Aug. 24, 2016). In defendant's response to the request for admission, on 24 July 2017, he expressly denied that the existence of a fiduciary duty between him and plaintiff. (Def.'s Resp. to Pl.'s Admis. (DE # 24) at 3.)

As for defendant's deposition, he answered that he felt he "[h]eld a certain position of trust and confidence for the business" based on his work experience with plaintiff and managerial duties in his position. (Hernandez Dep. (DE # 32-3) at 51.) However, this testimony does not mean that a fiduciary relationship in fact existed between plaintiff and defendant. See Melanson, 2014 WL 4375715, at *12 (finding no general principle in Texas law that recognizing an informal fiduciary relationship in the context of typical at-will employment); Schlumberger Tech. Corp., 959 S.W.2d at 176–177 ("[N]ot every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship."). Unlike Kinzbach Tool Co., Inc., defendant is a typical at-will employee, and plaintiff has not presented evidence that defendant had a special role to act on behalf of plaintiff, such as a sales representative. 160 S.W.2d at 512–13. Rather, plaintiff has cited to defendant's deposition, where he states that he was in charge of "production operations. . . responsible for time studies, for efficiency of equipment, efficiency of employees, efficiency of laundry." (Hernandez Dep. (DE # 32-2) at 17.) Such duties do not establish that defendant had a "special role" as an employee of plaintiff to show that, as a matter of law, there was a fiduciary relationship between plaintiff and defendant. Plaintiff's motion for partial summary judgment on its claim of breach of fiduciary duty will be denied.

D.   Constructive Fraud

"[C]onstructive fraud may be established by showing a breach of fiduciary duty." Clower v. Wells Fargo Bank, N.A., No. 2:07-CV-510-TJW-CE, 2010 WL 5510143, *2 (E.D. Tex. Oct. 18, 2010), report and recommendation adopted, No. 2:07-CV-510-TJW-CE, 2011 WL

31782 (E.D. Tex. Jan. 5, 2011). Plaintiff relies upon the argument that defendant breached his fiduciary duty to plaintiff, and consequently, as a matter of law, is liable for constructive fraud. However, as discussed above, plaintiff failed to show that it and defendant are in a fiduciary relationship. Accordingly, plaintiff's motion for partial summary judgment on its claim for constructive fraud will be denied.

E.  Fraudulent Inducement

> To recover on an action for fraud or fraudulent inducement, a party must prove that (1) a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew the representation was false or made it recklessly without knowledge of the truth as a positive assertion, (4) the representation was made with the intention that it should be acted upon by the party, (5) the party acted in reliance upon it, and (6) the party thereby suffered injury.

Siddiqui v. Fancy Bites, LLC, 504 S.W.3d 349, 369 (Tex. App. 2016), (internal quotations and citation omitted), reh'g overruled (Oct. 6, 2016), review denied (June 9, 2017); see Formosa Plastics Corp. USA v. Presidio Eng's & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998) ([T]he mere failure to perform a contract is not evidence of fraud. Rather, [the plaintiff] ha[s] to present evidence that [the defendant] made representations with the intent to deceive and with no intention of performing as represented."). The failure to disclose information can only be a false representation when a party had a duty to disclose. Siddiqui, 504 S.W.3d at 369.

> A duty to disclose may arise (1) when the parties have a confidential or fiduciary relationship; (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth; (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to a duty to speak. Whether such a duty to speak exists is a question of law.

Id.

17

Here, plaintiff contends defendant failed to disclose his employment for Ocean Fresh and Whitecap at the time of his termination and the execution of the severance agreement. (See Pl.'s Mem. (DE # 30) at 24.) Plaintiff contends defendant had a duty to disclose because of: his prior false misrepresentations to his supervisor about his current and future employment; his express knowledge that no one at Aramark was aware of his Ocean Fresh activities; and the fiduciary relationship between the parties.

However, defendant claims he was not aware his earlier representation was misleading or untrue. (See Hernandez Dep. (DE # 32-3) at 58-59; Def.'s Surreply (DE # 44) at 6.) Whether defendant knew, or should have known, his prior statements were false, or at what time he found out they were false, in order for him to disclose anything at the severance agreement meeting, is not a matter for summary judgment. See Four Bros. Boat Works v. Tesoro Petroleum Companies, Inc., 217 S.W.3d 653, 671 (Tex. App. 2006) (finding a party's knowledge that its earlier representation was untrue and therefore it developed a duty to disclose in a fraud case not warranting summary judgment because issues of intent and knowledge are generally inappropriate for summary judgment); Susanoil, Inc. v. Cont'l Oil Co., 519 S.W.2d 230, 236 (Tex. Civ. App. 1975) (finding that whether the defendant made a representation that it knew was false or subsequently discovered it was false prior to completing its transaction with plaintiff an issue of material fact worth denying summary judgment in plaintiff's fraud action). Plaintiff also fails to show there was a fiduciary relationship between plaintiff and defendant. Therefore, plaintiff fails to show there was a duty to disclose. Accordingly, plaintiff's motion for partial summary judgment on its fraudulent inducement claim will be denied.

## IV. CONCLUSION

Plaintiff's motion for partial summary judgment is ALLOWED as to breach of contract based on the non-compete clause of the employment agreement and as to breach of the severance agreement, and DENIED in all other respects. The Clerk is DIRECTED to schedule a final pretrial conference no earlier than 45 days from the filing of this order. Further, because defendant has indicated a willingness to mediate, (Def.'s Surreply (DE # 44) at 1), the court refers the matter to United States Magistrate Judge James E. Gates for a status conference to explore the issue.

This 26 September 2018.

_____
W. Earl Britt
Senior U.S. District Judge